### SIMEON TAYLOR *vs.* GEORGE L. EDSON.

Poll parishes and voluntary religious societies, when not restricted by their charters or articles of association, may make by-laws declaring what shall constitute membership, and what shall operate as a forfeiture thereof, applicable to existing as well as to future members.

Where a religious society, not territorial, was incorporated, with a provision in the charter, that any person desirous of becoming a member might do so by entering his name with the wardens and vestry or clerk; and an act was subsequently passed, repealing this provision and authorizing the society to make by-laws determining the manner in which persons should thereafter become members, under which by-laws were accordingly made, in terms applicable as well to existing as future members; it was held, that a person, who was a member of the society under the provisions of their charter, ceased to be a member by failing to comply with the conditions of the by-laws.

THIS was an action on the case against the defendant as clerk of a religious society, known as Trinity church, in the town of Bridgewater, for refusing to receive the vote of the plaintiff, claiming to be a member of the society, in the choice of a moderator, at the annual meeting thereof in April, 1849. The trial was before *Bigelow*, J., in the court of common pleas.

The society in question was incorporated by the act of 1815, *c.* 12, passed on the 14th of June, 1815. By the second section of this act, it was provided, that any person who might desire to become a member of the society, and should enter his name with the wardens and vestry or clerk thereof, should be deemed, taken and entitled, and, with his poll and estate, be liable for all lawful taxes and assessments, as a member of the society; and that such members should be thereafter exempted, with their polls and estates, from all other taxes and assessments for the support of public worship, in the town or parish where they might respectively reside; provided, that persons subsequently becoming members should give notice thereof in writing to the assessors or clerk of the parish or town, where they might reside, and, until notice, should not be entitled to such exemption; and provided, also, that persons withdrawing from the said society, who should give notice thereof in writing to the wardens and vestry, or clerk for the time being, should be no

onger liable for any taxes or assessments afterwards granted and voted therein ; and that they with their estates should again become liable and holden for all other taxes and duties for the support of public worship, in the parish or town where they might respectively reside, and as other inhabitants who were not entitled to any special exemption.

By the third section of the act, authority was conferred upon the society to pass all such by-laws and rules, as should be deemed necessary for the well-governing of the same, not incompatible with the laws and constitution of the commonwealth.

By an act, passed on the 15th of March, 1845, (*St.* 1845, *c.* 136,) in addition to the former act, it was provided (§ 1), that all questions relative to the use, occupancy, repairs or rebuilding of any church, edifice, or place of public worship, which Trinity church in Bridgwater might own, should be determined by the pew owners present and voting thereon, each pew owner to be entitled to as many votes as he should own pews in said church, edifice, or place of public worship ; and (§ 2) that the corporation should have power to make by-laws, determining the manner by which persons should thereafter become members thereof. The third section of this act repealed the second section of the former.

On the 24th of March, 1845, the society, in pursuance of the authority conferred by the additional act, adopted the following by-laws relating to the subject of membership : —

"Article 1st. All owners of a pew or pews in this church, who shall subscribe and pay annually for the support of public worship in this church a sum not less than five dollars, and any person not a pew owner who shall hire or rent a pew in said church, and shall subscribe and pay annually for the support of public worship a sum not less than five dollars, in addition to the rent of said pew, shall be deemed members of this parish, and entitled to vote at the annual meeting of said parish, subsequent to such subscription and payment and during its continuance, and no longer.

"Article 2d. Such persons as neither own or rent a pew who shall regularly attend church, and shall subscribe and pay annually a sum not less than ten dollars for the support of public worship in this church, shall be deemed members, and entitled to vote as provided in the last clause of the section above.

"Any by-laws of this parish, inconsistent with the foregoing, are hereby repealed."

It was in evidence, on the part of the plaintiff, that he was one of the persons, thirty-two in number, named in the act of incorporation of the said society; that his name was duly entered with the clerk thereof, as a member of the same, prior to the year 1816, in pursuance of the second section of the act of incorporation; that from that time to the annual meeting in April, 1849, the plaintiff had usually worshipped with said society, — had uniformly acted as a member thereof, — had been from time to time elected to various offices in the society, — and at the annual meeting in 1848, had been chosen a vestry-man; and that from the 23d of June, 1837, the plaintiff had been the owner of a pew in said Trinity church.

It was also in evidence, for the plaintiff, that at the annual meeting of the society duly called in April, 1849, for the purpose, among others, of choosing a moderator, the defendant, being the clerk of the society, presided at the choice of moderator, and the plaintiff offered to put in his ballot therefor, but the defendant refused to receive the same, on the ground, that the plaintiff was not entitled to vote in said society, because he had failed to comply with the by-laws above mentioned.

The defendant thereupon offered to prove, that the plaintiff had not complied with the provisions of the by-laws aforesaid, having failed to pay the sum named in the first article for the support of public worship; and contended, that by the operation of the third section of the act of incorporation, and of the second section of the additional act, relating to the adoption of by-laws, the plaintiff had ceased to be a member of the society, and had no right to vote therein.

But the presiding judge instructed the jury, that by the provisions of the act of 1845, empowering the society to pass by-laws, no authority was given to pass by-laws regulating the subject of membership; that the mode, in which a person might become a member of said society, was fixed and established by the second section of the act of 1815, and that the plaintiff having complied with the provisions of that

section, and been a member of the society prior to 1845, was not affected in his rights by the act of 1845, and the by-laws of March 24th made in pursuance thereof, and that therefore his right of membership was not forfeited by a non-compliance with the said by-laws.

The jury returned a verdict in favor of the plaintiff, and the defendant alleged exceptions.

The case was argued in writing by *R. H. Dana, Jr.* (with whom was *R. Choate*), for the defendant, and by *H. G. O. Colby* and *W. Latham*, for the plaintiff.

The opinion of the court was delivered at the October term, 1850.

Dewey, J.    The law of this commonwealth regulating religious societies, and defining the privileges as well as liabilities of individual members of such associations, must be found in our peculiar local history and usages, in our constitution, and the various statutes enacted by the legislature, from time to time, rather than in any general principles contained in the elementary books relating to corporations generally. So, too, in examining questions appertaining to this subject, it is to be remembered, that religious societies in this commonwealth have been materially modified during the present century in some respects.

Closely connected as were religious and civil rights, in the early period of our history, the right of membership in a parish or religious society seems to have assumed much the same character with the right to be an inhabitant of a town, and to be entitled to all the privileges of such inhabitancy.    This right to the privileges seemed necessarily, and certainly very properly, to result from the correlative liability of each individual to be thus enrolled and made to bear the burdens of supporting religious worship.    It was a legal duty, devolving on all the citizens, to contribute to the parochial charges; and the organization of parishes, to a great extent, being no other than the town organization, the voters were much the same, and the rights and duties of the inhabitants, as to municipal privileges and burdens, and as to membership, were acquired and lost much in the same way

But this analogy was that of towns and territorial parishes. The various statutes of 1811, c. 6, 1823, c. 106, 1834, c. 183, the Rev. Sts. c. 20, and the amendment of the constitution in 1833, have, in the various changes introduced by them, materially affected the laws regulating territorial parishes. To what extent precisely, it is, however, unnecessary to decide, for the purpose of disposing of the present case. Those voluntary associations, known as poll parishes, have been established on different principles from territorial parishes, and particularly so as to membership. They are voluntary, and when unrestrained by their articles of association, or by their act of incorporation, if incorporated, are of course fully at liberty to prescribe terms of membership, from time to time, which terms will be of binding authority on all connected with the parish. The cases of *Fisher* v. *Whitman*, 13 Pick. 350, and *Oakes* v. *Hill*, 10 Pick. 333, may be referred to as bearing upon this point. The case of *Keith* v. *Howard*, 24 Pick. 292, in no respects conflicts with this view of the power of voluntary associations to regulate, at their pleasure, the terms of membership; the remarks there made being applicable to territorial parishes only.

We have no doubt, that in cases where no restrictions are found in the charter or articles of association, voluntary societies or poll parishes have a right to make by-laws, declaring what shall constitute membership, and what shall operate to cause a forfeiture of membership, and that such by-laws may as well apply to present as to future members.

It seems to us, therefore, that the only questions that require consideration in the present case are: 1st, whether the society, known as Trinity church in Bridgewater, is a poll parish; 2d, whether the act incorporating this society contains any restrictive words which take from the society the general power incident to poll parishes to regulate membership by their by-laws; and 3d, whether the by-laws of March 24th, 1845, adopted by this society, apply to those persons who were members at the time of their adoption, or are merely applicable to those who might afterwards become members.

Taylor v. Edson.

1. As to the first point, there can be no doubt, that this is a poll parish, and not a territorial parish. It has no territoria. limits; includes nobody merely by reason of a particular residence; and its charter only incorporates as members those particular individuals who may voluntarily unite with the society.

2. As to the second point, whether the act of incorporation contains any restrictive words, precluding this society from regulating the terms of membership, the court are of opinion, that the provisions of the second section do not restrain the society from exercising the general power, incident to poll parishes, to regulate membership and to prescribe the terms and conditions of such membership, so far as appertains to parochial matters. It is true, as is urged on behalf of the plaintiff, that by the second section of the act of incorporation, a mode is provided, by which one may become a member of the society. This provision, and in the form in which it here exists, is not unusual, and will be found in many other acts of incorporation of religious societies.

The leading object, and perhaps the principal one, in the view of the legislature, in enacting the second section of the act, was to make adequate provision for the exemption of those, who were members of this society, from all other taxes for the support of public worship in the town or parish in which they resided, and in which but for such provision they might be liable to assessment for such purposes. In inserting this provision in the act of incorporation, we do not suppose that the legislature intended to restrain the persons associated, from introducing other provisions and regulations necessary for the well being and perhaps essential to the very existence of the society, as a living active body, as for example, that of requiring, as a condition of membership, a contribution to the expenses incident to the support and maintenance of a public preacher or pastor. In poll parishes, where the town system of taxation upon the polls and estates is comparatively rarely resorted to, it can hardly be supposed, that the legislature would thus restrict the parish, in a matter so materil to its usefulness, if not to its very existence.

We are of opinion, that this society had the ordinary powers, incident to poll parishes, to regulate by their by-laws the terms and conditions of future membership; that such regulations might be prospectively applied to existing members; and that such persons might lose their rights as members, by their neglect to comply with the by-laws of the society.

3. The next inquiry is, whether the by-laws adopted by this society March 24th, 1845, apply to those who were members before its adoption. The language of these by-laws is general; and the subject of them as stated in the title is "membership." The obviously expedient rule, and one we should anticipate would be adopted, would be one alike operative upon old and new members, in reference to their liabilities and forfeitures for neglect to contribute to parochial charges. The symmetry of the system would require such a rule, and this seems to be the reasonable construction of these by-laws.

The statute of 1845, *c.* 136, which repeals the second section of the original act of incorporation, is in perfect harmony with the views which we have taken of the power of the society to regulate the subject of membership, and directly provides for the adoption of such regulations by subsequent by-laws. In terms, the statute is prospective in its application; but repealing, as it does, absolutely, the second section of the act of incorporation, its effect and purpose would seem to be to provide prospectively as to the admission of new members, and incidentally to affect all members, so far as to prescribe conditions of continuing membership.

Upon the whole matter, the court are of opinion, that the exceptions to the ruling of the court of common pleas must be sustained.       *Verdict set aside, and new trial granted.*